UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARNELL BATES, #180983,

                Petitioner,

v.                               CASE NO. 07-11073
                               HONORABLE DENISE PAGE HOOD

LINDA METRISH,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I. Introduction**

      Petitioner, Carnell Bates, is a state inmate currently incarcerated at Kinross Correctional

Facility in Kincheloe, Michigan. Petitioner was convicted at the conclusion of a Wayne County

Circuit Court jury trial of one count of first-degree premeditated murder, Mich. Comp. Laws

§750.316; and possession of a firearm during the commission of a felony, Mich. Comp. Laws

§750.227b. Petitioner was sentenced to life imprisonment for the murder conviction and a

consecutive two year term of imprisonment for the felony firearm conviction. Petitioner has filed

a petition for writ of habeas corpus through counsel under 28 U.S.C. §2254. For the reasons that

follow, the Court will deny the petition. The Court also denies a certificate of appealability and

leave to proceed *in forma pauperis* on appeal.

## II. Background

Petitioner's convictions arise from the shooting death of Prince Edward Russell in Detroit, Michigan on February 17, 1985. Petitioner and his brother, Darnell Bates, were convicted of the murder. The Michigan Court of Appeals in this case set forth underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd* . 41 Fed. App'x. 730 (6th Cir. 2002), as follows:

> Prince Edward Russell (Prince) is the deceased. Prince was a drug dealer and carried both a gun and a beeper. Prince' s mother, Marie Russell, testified that in the early evening of February 17, 1985, defendant Carnell Bates (Carnell), who she referred to as Twin, came over to her house looking for Prince. Although Prince was not there, Carnell stayed there for approximately one hour with Prince's girlfriend, Melody. When Melody left with Carnell, she took a gun with her. Melody also appeared to be Carnell's girlfriend.
>
> The following morning, at 7:30 a.m., someone called the police to report what appeared to be a dead body in an alley. When the police arrived, they discovered Prince's body wrapped in some blankets and tied with two electrical cords and a rope. Prince died from massive blood loss, the result of multiple gunshot wounds. Prince was shot either twelve or thirteen times, seven times in the chest, twice in the back, twice in the left arm, once in the head, and once in the left leg.
>
> On March 1, 1985, defendant Darnell Bates (Darnell) was arrested following an automobile accident. Detroit Police Officer William Price testified that he initially began following the car in which Darnell was riding because the driver was speeding and ran a stop sign. Immediately after Darnell's vehicle struck another vehicle, Darnell exited on the passenger's side and Price saw him throw a pistol back in the car. This gun was recovered in the car after Darnell's arrest. Detroit Police Officer John Winslow also testified that a brown paper bag with suspected narcotics was recovered from the car. John Journe, the driver of the car, testified that he did not have a gun and that the brown bag belonged to Darnell.
>
> Kip C. Beasley (Kip) testified that he had been granted immunity from prosecution in this case in exchange for his cooperation. Kip stated that he saw Carnell and Melody about 10:30 p.m. on February 17, riding in Carnell's car. Kip then joined the two and as the three rode in Carnell's car, Kip described Carnell as being "hyper---got real aggressive air about his self". Carnell then told Kip that Prince had said he (Prince) was going to kill Carnell and take his spot in the drug operation and that Prince had been cutting up "rocks" and buying guns without Carnell's

knowledge. Carnell, very angry and swearing, then told Kip "This guy gotta go . . . he has to go."

Carnell then stopped the car at a telephone booth and called Prince. Then, he called Darnell. Thereafter, Carnell, Kip, and Melody drove to Prince's house, but Melody asked to be let out of the car so that Prince would not see her. Carnell drove by Prince's house, went back to the telephone booth and again called Darnell. The group then went to a place on Seven Mile Road and Livernois and Darnell met them there several minutes later. After some discussion, Darnell and Kip took Melody to Darnell's girlfriend's house. The discussion concerned Kip's, Darnell's and Carnell's plans to talk about the narcotics situation alone with Prince. Darnell told Carnell that he (Carnell) should tell Prince that Darnell had been robbed and that they were going to the house on Plainview to get a gun. From there they would go after the "robbers." To make this story more believable, Darnell gave his girlfriend his rings and his money.

After dropping Melody off, Darnell and Kip drove to Prince's house.  Carnell followed in his own vehicle.  Darnell asked for his gun.  Prince claimed the gun was in his house, but before he could go in and get it, Carnell asked Prince to enter his car.  Prince complied and, after talking for a few minutes, Carnell and Prince drove off.  Darnell and Kip followed.

Darnell then forced Carnell's car to pull over and told Carnell to let Prince go back to his house to get his gun.  Prince then retrieved his gun and gave it to Kip.  Prince reentered Carnell's vehicle and Kip reentered Darnell's car.  Carnell followed Darnell to the Plainview house.  Upon arrival, Kip gave Prince's gun to Darnell.  Kip already had a weapon.  The men entered the home and Darnell pretended to look for a gun.

Then, Carnell pulled out his gun and led Prince to a bedroom. Carnell confronted Prince with the story that Prince was cutting up "rocks" and buying guns and that he was going to kill Carnell. Prince denied these allegations and Carnell hit Prince. Carnell then searched Prince and found money and cocaine. It was at this time that Carnell shot Prince in the left shoulder. After shooting him, Carnell asked Prince if he was okay and resumed the questioning. Prince still denied the allegations and Darnell shot Prince in the leg. Darnell again questioned Prince and then "unloaded." Kip described the situation as "just a steady gun fire from that point on. He (Darnell) shot until he ran out of bullets, I guess." At the same time, Carnell was also shooting until his gun jammed. Carnell then took Kip's gun and shot Prince once or twice more.

Following the shooting, the three men went into the kitchen and drank some beer. After a discussion between the brothers, Darnell handed Kip a gun and told him to shoot Prince, stating, "put two in his head."  At this point, Kip and Carnell believed

Prince was already dead, but Darnell wanted to make sure. Fearing for his own life, Kip complied and shot Prince in the head. Afterwards, Darnell suggested that they dispose of the body. The men then wrapped Prince's body in some blankets and secured it with two electrical cords and a rope. Before all three men put Prince's body in the trunk of another car, Carnell took Prince's beeper and gathered up some shell casings in order to dispose of them. Subsequently, Prince's body was dumped in the alley.

At trial, the guns were admitted into evidence and identified by Kip as those used in the shooting. Additionally, there was testimony linking a number of spent bullets found at the scene as being shot from those same guns. Moreover, one of the electrical cords used to tie the body had been cut from a fan located in the house. The other cord used in wrapping the body had been cut from a motorized chair which was also located in the Plainview house.

Finally, Carnell testified that he worked for Kip in the drug organization, dropping off cocaine and picking up money on Santa Rosa Street. He stated that he did not carry a gun or any weapon. Although Carnell admitted being at Prince's house on February 17 and leaving there with Melody, he claimed that they left to meet Prince. When Prince failed to show up, he claimed that he took Melody to Darnell's girlfriend's house. After Darnell arrived, both men left, picked up some Chinese food and then returned to Darnell's girlfriend's home. They stayed there until 5:30 a.m. the next morning. Carnell claimed that defendants had not seen Prince that night.

*People v. Bates*, No. 93152, slip op. at *1-5 (Mich. Ct. App. April 17, 1987) (unpublished).

Following sentencing, Petitioner and his brother, Darnell Bates, filed a joint appeal in the Michigan Court of Appeals raising the following claims:

"I. Was defendant deprived of his right under the 14th Amendment to the United States Constitution and under Section 17, Article I, Michigan Constitution 1963 to have the prosecution prove each and every element of the crime charged against him beyond a reasonable doubt when he was convicted of premeditated murder in the first degree when the prosecution failed to adduce sufficient evidence to convince any rational trier of fact of the element of premeditation beyond a reasonable doubt.

II. Was defendant deprived of his right to due process and a fair trial under the 14th Amendment to the United States Constitution and under Section 17, Article I, Michigan Constitution 1963, when the trial judge gave an erroneous and confusing instruction on the defendant's only defense, that of alibi."

Petitioner and his brother, Darnell Bates, filed a joint reply brief adding the following claim for review on appeal:

> I. Whether when the trial judge elected to instruct the jury on the defense alibi, it was his duty to instruct the jury fully and accurately so as not to prejudice the defendant.

The Michigan Court of Appeals issued a consolidated opinion affirming Petitioner and Darnell Bates' convictions. *People v. Bates*, No. 93152 (Mich. Ct. App. April 17, 1987) (unpublished). Subsequently, Petitioner and Darnell Bates filed a joint application for leave to appeal with the Michigan Supreme Court raising the same issues presented before the Michigan Court of Appeals. The Michigan Supreme Court denied relief. *People v. Bates*, No. 80725 (Mich. Sup. Ct. June 26, 1987).

Petitioner and Darnell Bates then filed a joint petition for writ of habeas corpus in this Court raising the same claims presented to the state courts on direct appeal of their convictions. The Court found that their claims lacked merit and denied the petition. *Bates v. Withrow*, No. 87-CV-72569-DT (E.D. Mich. Jan. 28, 1988) (Taylor, J.), *cert. of prob. cause den.* No. 88-1133 (6th Cir. March 31, 1989).

On March 21, 1988, Petitioner filed a motion for leave to file a delayed motion for new trial and for evidentiary hearing in the state trial court. The trial court conducted a hearing to determine whether trial counsel was ineffective for failing to communicate a plea offer to Petitioner. The court thereafter denied the motion on July 21, 1988. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals raising the following issues:

> "I. Whether defendants were deprived of their right under the 6th Amendment to the United States Constitution and under Section 20, Article I, Michigan Constitution 1963 to effective assistance on trial when their trial counsel failed and omitted to

communicate to them the fact that the prosecutor had made a plea bargain offer and the terms thereof.

II.  Whether defendants waived the issue presented in their present application and whether they are estopped by laches or any other principle of law from asserting the issue of ineffectiveness of trial counsel as basis for appellate relief."

Leave to appeal was granted.  *People v. Bates,* No: 110628 (Mich. ct. App. Dec. 5, 1988).  The Michigan Court of Appeals then affirmed the trial court's decision.  *People v. Bates*, No. 110628 (Mich. Ct. App. Dec. 27, 1989) (unpublished).  Petitioner and Darnell Bates subsequently filed an application for leave to appeal with the Michigan Supreme Court and relief was denied.  *People v. Bates*, No. 88068 (Mich. Sup. Ct. Sept. 5, 1990).

Petitioner and Darnell Bates then filed their second joint petition for writ of habeas corpus with this Court asserting the following:

"I.  Whether Petitioners were deprived of their right under the Sixth Amendment to the United States Constitution to effective assistance of counsel on trial when their trial counsel failed and omitted to communicate to them the fact that the prosecutor had made a plea bargain offer and the terms thereof."

The Court dismissed the petition without prejudice as an abuse of the writ.  *Bates v. Withrow*, No. 90-CV- 40256-SN (E.D. Mich. March 31, 1992) (Newblatt, J. adopting magistrate judge's report and recommendation), *aff'd*. No. 92-1487 (6th Cir. Dec. 18, 1992). Petitioner and Darnell Bates filed a motion for reconsideration which was denied on February 9, 1993.  They subsequently filed a joint writ of certiorari in the United States Supreme Court which was also denied.

In 1994, Petitioner filed a motion for relief from judgment in the state trial court alleging ineffective assistance of counsel, which the trial court denied on February 18, 1994.  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which remanded the case for an evidentiary hearing.  Following the required hearing, the trial court denied the motion on June

1, 1995.  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied.  *People v. Bates*, No. 173818 (Mich. Ct. App. Oct. 23, 1995) (unpublished).  The Michigan Supreme Court denied leave to appeal.  *People v. Bates*, 452 Mich. 874, 552 N.W.2d 173 (July 29, 1996).  On May 19, 1997, Petitioner sought permission from the Sixth Circuit to file a successive habeas petition, but his request was denied.  *In re Bates*, No. 97-0163 (6th Cir. Aug. 13, 1997).

Petitioner subsequently filed another motion for relief from judgment with the state trial court based upon the following issues: (1) newly-discovered evidence in the form of Kip Beasley's recanting affidavit; (2) lack of subject matter and personal jurisdiction over this case; and (3) deprivation of the right to a fair trial due to the cumulative effect of all the post conviction errors. The trial court denied the motion finding that Beasley's affidavit was unreliable; the trial court was vested with proper jurisdiction; and an insufficient number of errors were found to rise to the level of causing manifest injustice.  *People v. Bates*, No. 85-2957 (Wayne Co. Cir. Ct. April 14, 2004). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising the following claims:

> I.  Where Kip Beasley, the only prosecution witness who testified at trial that he witnessed Mr. Carnell Bates and his twin brother, Darnell Bates shoot and kill the decedent, has now admitted under oath at a post-conviction evidentiary hearing that he perjured himself at the trial; that the defendants were not even present at the time the decedent was shot; and that he himself and and another man committed the murder and disposed of the body; and where the successor trial court denied the motion for new trial without having read the trial transcript and without making a finding that Beasley's recent testimony would not make a different result probable on retrial; the decision of the trial court must be reversed, and a new trial must be granted; or alternatively , this case must be remanded for further proceedings before a different judge with respect whether Beasley's recent testimony would make a different result probable on retrial.

II.  This case should be judged under the statutory  standards for determining whether "justice has not been done," rather than the more restrictive standards of MCR 6.500."

Relief was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bates*, No. 263527 (Mich. Ct. App. Feb. 9, 2006).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims and relief was similarly denied.  *People v. Bates*, 477 Mich. 971; 725 N.W.2d 19 (2006) (table).

On March 20, 2007, Petitioner filed a motion with the United States Court of Appeals for the Sixth Circuit seeking permission to file a third habeas petition with this Court.  The Sixth Circuit granted Petitioner's motion and entered an Order on September 11, 2007 [Dkt. # 5], allowing him leave to file a successor petition on the basis of the Beasley affidavit.  *In re: Carnell Bates,* No*:* 07-1354 (6th Cir. Sept. 11, 2007) .

Petitioner, through counsel, thereafter filed the instant petition raising the following claims as grounds for relief:

"I.  Petitioner was denied due process where he was convicted on the basis of perjured testimony, where the state court denied an evidentiary hearing and new trial despite newly-discovered evidence proving the perjury.

II.  Petitioner suffered from deprivation of counsel that was also ineffective assistance of counsel.

III.  Petitioner suffered from ineffective assistance of counsel on appeal.

IV.  Petitioner's issues from the 1997 petition for habeas corpus should be considered because [the petition] rejected on the basis of untimeliness now known to be incorrect.

V.  Petitioner should be allowed a successive petition for habeas corpus, and excused from procedural defaults, if any, because of a substantial showing of innocence.

VI.  Petitioner was denied his constitutional right to counsel by the conflict of

interest of attorney Elliott.

VII.  Petitioner was prejudiced by ineffective assistance of counsel.

VIII.  Petitioner was denied due process by improper prosecutor argument.

IX.  Petitioner was denied due process by improper jury instructions."

Respondent has filed an answer to the petition contending that it should be denied as untimely and/or for lack of merit.  Petitioner has filed a reply to that answer.

## III.    **Standard of Review**

A state prisoner is entitled to the writ of habeas corpus only if the state court's adjudication of his or her claims on their merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413.

## IV.  Discussion

### A.  Claims Based on Kip Beasley's Affidavit

As noted, the Sixth Circuit granted Petitioner permission to file a successive petition based upon Kip Beasley's affidavit in which he recants his trial testimony that Petitioner was one of the people who shot and killed Prince Edward Russell in 1985.  Two of Petitioner's claims, the perjured testimony claim (Habeas Claim I) and the actual innocence claim (Habeas Claim V), are based on Kip Beasley's affidavit.  The Court will therefore proceed to address the timeliness and merits of those claims.

### 1.  Timeliness

As an initial matter, Respondent contends that the petition should be dismissed as untimely under the applicable one-year statute of limitations.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, became effective on April 24, 1996.  The AEDPA governs the filing date for this action because Petitioner filed this petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A habeas petition filed outside the time period prescribed by this section must be dismissed. *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (dismissing case filed 13 days after the limitations period expired); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

Petitioner's convictions became final before the AEDPA's April 24, 1996 effective date. Prisoners whose convictions became final prior to the AEDPA's effective date are given a one-year grace period in which to file their federal habeas petitions. *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000). Accordingly, Petitioner was required to file his habeas petition on or before April 24, 1997, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

Petitioner had a post-conviction motion pending in the state courts until July 29, 1996. The one-year period commenced the next day and ran until Petitioner sought leave to file a successive habeas petition with the Sixth Circuit on May 19, 1997.[1] At that point, 294 days of the one-year period had passed. The period was tolled until the Sixth Circuit denied his request on August 11,

---

[1]While the time in which a habeas case is pending in federal court is not statutorily tolled, *see Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) so as to statutorily toll the limitations period), such time is equitably tolled by the Court. *See, e.g., Johnson v. Warren*, 344 F. Supp. 2d 1081, 1088-89 (E.D. Mich. 2004).

1997. The limitations period then resumed and continued to run until it expired 71 days later on or about October 21, 1997.

Petitioner did not file his next state court motion for relief from judgment until June 2, 2002. The one-year limitations period expired well before Petitioner sought state post-conviction review. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado*, 337 F.3d at 641. The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner alleges that his perjured testimony and actual innocence claims are based upon newly-discovered evidence – the Beasley affidavit. As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. As relevant here, the limitations period may begin on the date that a petitioner first discovers the factual basis for his claim. *See* 28 U.S.C. § 2244(d)(1)(D). Petitioner asserts that his habeas claims concerning the use of perjured testimony and his actual innocence are based on newly-discovered evidence, specifically, Kip Beasley's affidavit in which he recants his trial testimony that Petitioner was one of the people who shot and killed the victim. Beasley signed the affidavit on September 17, 2001. If the Court relies on that date, his claims based upon that affidavit are clearly timely because Petitioner filed his subsequent state court motion for relief from judgment on June 2, 2002. At that point, 258 days of the one-year limitations period had run. The time was then tolled while Petitioner proceeded in the state courts until April 26, 2005. The one-year period then resumed running for 79 more days until

Petitioner filed the instant petition on July 14, 2005. Only 337 days of the one-year period had expired.

Respondent, however, contends that the petition is still time-barred because Petitioner has offered no evidence or information as to when he discovered that Kip Beasley was willing to recant his trial testimony and has failed to provide evidence that he was diligent in obtaining the affidavit and pursuing his remedies. Petitioner replies that he could not have filed any claims based upon the affidavit until the affidavit was actually signed.

Under § 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. *See Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (citing cases). The time commences when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. *Id*. The start of the limitations period does not await the collection of evidence to support the facts. *Id*. A habeas petitioner has the burden of showing that he exercised due diligence in discovering the factual predicate for his claims. *See Stokes v. Leonard*, 26 Fed. Appx. 891, 804 (6th Cir. 2002).

Federal courts have applied these principles to cases involving recanting witness affidavits ruling that the limitations period begins when the petitioner knew or could have discovered that the witness was willing to recant his or her testimony, not when the affidavit is executed. *See, e.g,, Webb v. Bell*, No. 2:07-CV-12689, 2008 WL 2242616, *5 (E.D. Mich. May 30, 2008) (noting that date of notarized affidavit merely informs the court when it was signed, not when the witness recanted his testimony or whether the petitioner exercised due diligence); *Deloney v. McCann*, 229 Fed Appx. 419, 422 (7th Cir. 2007) (ruling that limitations period began when the petitioner became aware of

relevant facts not when he obtained supporting evidence and noting that the petitioner did not argue that he was unaware of the witness's recantation until he obtained her affidavit); *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 711-12 (E.D. Pa. 2009) (limitations period began to run when the witness's sister contacted petitioner in prison and informed him that the witness was willing to recant); *Chism v. Johnson*, No. 3-99-CV-2412-BD, 2000 WL 256875, *2 (N.D. Tex. March 7, 2000) (rejecting argument that petitioner could not have discovered the factual predicate for his claim until the witness executed affidavit recanting trial testimony); *see also Fama v. Commissioner of Corr. Svs.*, 235 F.3d 804, 816 n. 10 (2d Cir. 2000) (noting that the affidavit was not newly-discovered when signed in 1997 because affiant apprised the petitioner of the witness's admission of perjury in a 1995 letter).

In this case, Petitioner neither alleges nor establishes when he became aware that Kip Beasley was willing to recant his trial testimony identifying Petitioner as one of the men who committed the murder. He has failed to satisfy his burden of demonstrating that he acted with due diligence in pursuing his habeas claims. More significantly, the record before this Court indicates that Petitioner was aware or could have been aware that Beasley was willing to recant his trial testimony well before Beasley signed the affidavit in 2001. At a state court evidentiary hearing conducted in a similar post-conviction case involving Carnell Bates, Petitioner's co-defendant and brother, Kip Beasley testified that he wrote a letter to Petitioner's defense counsel in May, 1995 indicating that he wanted to see her and that he was willing to recant his trial testimony and clear Petitioner (and his brother) of involvement in the shooting. Counsel responded to his letter citing a conflict of interest. The relevant portion of Beasley's letter was read into the record at the state hearing. *See* 6/24/04 Evid. Hrg. Tr., pp. 15-16 (transcript filed by Petitioner's counsel to supplement the habeas record).

14

Petitioner was aware or should have been aware of the factual basis for his habeas claims as early as May, 1995, well before the expiration of the one-year grace period. As noted, the start of the limitations period does not await the collection of evidence or the recognition of the legal significance of any facts. Petitioner's habeas action is barred by the statute of limitations set forth at 28 U.S.C. § 2244(d).

The United States Court of Appeals for the Sixth Circuit has determined that the one-year limitations period is not a jurisdictional bar and is subject to equitable tolling. In *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001), the Sixth Circuit ruled that the test to determine whether equitable tolling of the habeas limitations period is appropriate is the five-part test set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The five parts of the test are:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008. "These factors are not necessarily comprehensive and they are not all relevant in all cases. Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002) (internal citation omitted). A petitioner, however, has the burden of demonstrating that he is entitled to equitable tolling. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

Petitioner does not allege that he is entitled to equitable tolling under *Dunlap*. The fact that

Petitioner is untrained in the law, may have been proceeding without a lawyer for a time, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (ignorance of the law does not justify tolling); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). Petitioner is not entitled to equitable tolling under *Dunlap.*

The Sixth Circuit has also held that a credible claim of actual innocence may equitably toll the one-year statute of limitations set forth at 28 U.S.C. § 2244(d)(1). *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005); *see also Knickerbocker v. Wolfenbarger,* 212 Fed. Appx. 426 (6th Cir. 2007); *Holloway,* 166 F. Supp. 2d at 1190. As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Significantly, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The Sixth Circuit has recognized that the actual innocence exception should "remain rare" and only be applied in the "extraordinary case." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Petitioner asserts that any procedural bar should be excused because he is actually innocent.

As an initial matter, the Court notes that Petitioner's own self-serving assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). Petitioner testified at his trial that he did not see Prince on February 17, 1985. By its verdict, the jury did not believe Petitioner's testimony.

Petitioner does not solely rely upon his own assertions. Rather, he contends that he is actually innocent based upon Kip Beasley's affidavit. However, affidavits by witnesses recanting their trial testimony are viewed with extreme suspicion. *See McCray*, 499 F.3d at 574; *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001); *see also Allen v. Yukins*, 366 F.3d 396, 405-06 (6th Cir. 2004) (affidavits from co-defendants are inherently suspect with regard to actual innocence claims). Beasley's affidavit is suspect and unreliable for several reasons.

First, Beasley waited 10 years after the trial to indicate that he was willing to recant his trial testimony and 16 years after trial to execute his affidavit. Such a long delay in coming forward renders his recantation suspect. *See Lewis v. Smith*, 110 Fed. Appx. 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious a witness' recanting affidavit made two years after trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993) (recantation more than four years after trial testimony was dubious). Second, Beasley executed the affidavit in 2001 while incarcerated at the same prison with Petitioner's co-defendant and brother, Carnell Bates. *See* 6/24/04 Evid. Hrg. Tr., p. 36. Third, Beasley recanted his testimony and executed his affidavit after being convicted of several counts of armed robbery and sentenced to 25 to 40 years imprisonment in 1991. *See* Offender Profile, Michigan Department of Corrections Offender Tracking Information System ("OTIS"). Jailhouse recantations usually lack meaningful indicia of reliability and are "highly suspicious."

*United States v. Connolly*, 504 F.3d 206, 215 (1st Cir. 2007); *cert. den.* 128 S. Ct. 1689 (2008). Fourth, there is no evidence in the record to corroborate Beasley's claim that Petitioner was not involved in the murder of Prince Edward Russell. *See, e.g., Teagle v. Diguglielmo*, No. 08-2587, 2009 WL 1941983, *3 (3d Cir. June 11, 2009) (unpublished case stating that witness' recantation of trial testimony was suspicious and untrustworthy and "did not, in the absence of additional corroborating evidence or circumstance, meet the standard of reliability contemplated by *Schlup*"); *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (uncorroborated recantation is "even more unreliable" where trial testimony was consistent with other evidence and recantation was not). Given such circumstances, the Court finds that Beasley's recantation is untrustworthy and does not establish Petitioner's actual innocence. Petitioner is not entitled to equitable tolling of the one-year period. His petition is untimely and subject to dismissal.

Nonetheless, even if the claims based upon the Beasley affidavit are deemed timely (by starting the one-year period when the affidavit was signed), Petitioner is still not entitled to relief on those claims as those claims lack merit. *See* discussion *infra*.

### 2. Perjured Testimony Claim

Petitioner asserts that he is entitled to habeas relief because the prosecution knowingly presented perjured or false testimony by Kip Beasley. The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97,

103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. Recantation of testimony alone, however, is insufficient to establish a due process violation. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

The state trial court denied relief on this claim finding that neither a new trial nor an evidentiary hearing were warranted on the basis of Kip Beasley's affidavit. The court noted that Beasley waited 16 years after trial to recant his testimony and that there was no evidence to corroborate the statements in his affidavit. The state appellate courts subsequently denied leave to appeal under Michigan Court Rule 6.508(D).[2] The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

---

[2]The Court notes that this claim may be barred by procedural default based upon the state appellate courts' decisions. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, No. 06-1569, 2009 WL 426261, *6 (6th Cir. Feb. 20, 2009) (unpublished opinion confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* _ U.S. _, 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief under MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit in the grounds presented). However, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court finds that this procedural issue is complex and the interests of justice are best served by addressing the merits of this claim.

Petitioner contends that the prosecution knew that Beasley's trial testimony implicating him in the shooting was false because Beasley failed a polygraph examination prior to trial and the prosecution was aware of that failure. Petitioner has not provided this Court with the polygraph examination, but a police report attached as an exhibit to his petition indicates that the examination included the following questions and answers:

1. Beside the location of the guns - do you know for sure of any false information you gave the police? (No).
2. Did you shoot Prince? (No).
3. Were you there when Prince was shot? (No).
4. Are you protecting the parties responsible for shooting Prince? (No).
5. Have you made up any part of your story? (No).

Sgt. Sanders' Report, Pet. Appx. #3. The report further indicates that, during a post-examination interview, Beasley admitted being present when Petitioner and his brother shot the victim and that they wanted him to shoot the victim as well. *Id.*

The fact that Beasley failed a polygraph examination during the police investigation does not mean that he gave false testimony at trial or that the prosecution knowingly presented false testimony. *See King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999). First, polygraph examinations are not reliable. In fact, the Supreme Court has stated that "there is simply no consensus that polygraph evidence is reliable...the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309 (1998); *see also United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994). Beasley may have failed the polygraph examination because he was lying (as to some or all of his responses), because he was nervous, or due to examiner error. Beasley could have lied about his role in the crime, Petitioner's or Carnell Bates' involvement, or a multitude of other facts or details surrounding the events at issue. *See King*, 192 F.3d at 522. The fact that Beasley gave inconsistent statements to the police does not mean that

his trial testimony was false or that the prosecution knowingly presented false testimony. Furthermore, Petitioner has not established that Beasley's trial testimony was actually false. As discussed *supra*, Beasley's recantation is not reliable.

Second, even if the failed polygraph is evidence that Beasley was lying, the questions in the police report indicate that he lied about *not* being present during the crime. Consequently, the police and prosecuting authorities could have reasonably believed that Beasley's post-interview admissions and subsequent trial testimony about being present when Petitioner and his brother shot the victim were truthful. Petitioner has failed to establish that Beasley's trial testimony was false and/or that the prosecution knowingly presented false testimony at trial. He is not entitled to habeas relief on such a basis.

### 3. Actual Innocence Claim

Petitioner also seems to assert that he is entitled to habeas relief because he is actually innocent of the murder. To the extent that he does so, he fails to state a claim upon which such habeas relief may be granted. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to

process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Sitto v. Lafler*, No. 06-2203, 2008 WL 2224862, *1 (6th Cir. May 28, 2008); *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). Petitioner's claim that he is actually innocent and has newly-discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001). He is not entitled to relief on such a basis.

## B. Analysis of Remaining Claims

### 1. Scope of Successive Petition Grant

Petitioner raises several other claims in his petition – alleging ineffective assistance of trial and appellate counsel, conflict of interest by trial counsel, prosecutorial misconduct, and improper jury instructions. Those claims, however, are not based on the Beasley affidavit. The Sixth Circuit only granted Petitioner permission to file this successive petition based upon the Beasley affidavit. His remaining claims exceed that grant. Accordingly, the Court is not authorized to address Petitioner's remaining claims. *See, e.g., Campbell v. Curtis*, No. 2:07-CV-14607, 2008 WL 4104346, *6-7 & n. 2 (E.D. Mich. Aug. 29, 2008) (Rosen, J.).

### 2. Authority to Review 1997 Claims

Petitioner asserts that the Court should review the claims from his 1997 habeas petition

because the Sixth Circuit erred in denying him permission to proceed in that case. This Court, however, has no authority to review the appropriateness of the Sixth Circuit's decision or overturn that ruling. *See, e.g., Hargrave-Thomas v. Yukins*, 450 F. Supp. 2d 711, 720 (E.D. Mich. 2006) ("This Court, as an inferior court, is plainly subject to the review of the Court of Appeals for the Sixth Circuit. *See* 28 U.S.C. § 1291. As such, by its very nature, this Court has no authority to reconsider the judgment of an appellate court. Restated, the very essence of the relationship between this Court and the Court of Appeals for the Sixth Circuit precludes this Court from altering any decision made by the Court of Appeals."). A district court also lacks the authority to reinstate a petitioner's second or successive habeas petition after the Court of Appeals declines to grant leave to file such a petition. *See, e.g., White v. Carter,* 27 Fed. Appx. 312, 313-14 (6th Cir. 2001). Because the Sixth Circuit declined to grant Petitioner permission to proceed with such claims in 1997 (and in the present case), this Court lacks the power to entertain such claims.

### 3. Timeliness

Nonetheless, even assuming that the Court had authority to consider Petitioner's remaining claims, the Court finds that those claims are untimely. Petitioner's remaining claims are not based upon the Beasley affidavit. The one-year limitations period as to those claims expired in October, 1997 well before Petitioner filed the instant petition. *See Ege v. Yukins*, 485 F.3d 364, 373-74 (6th Cir. 2007) (Section 2244(d)(1)(D) delayed start of due process claim based upon new evidence, but did not delay the start of the limitations period for ineffective assistance of counsel claim not based upon new factual predicate); *DiCenzi v. Rose*, 452 F.3d 465, 469-70 (6th Cir. 2006) (holding that limitations period on delayed appeal claim began on different date than sentencing claims); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416, n. 6 (2005) (noting that § 2244(d)(1)(A) provides for

calculating the limitations period for the "application" as a whole and §§ 2244(d)(1)(B), (C), (D), require claim-by-claim review).

In this case, Petitioner's ineffective assistance of counsel, conflict of interest, prosecutorial misconduct, and improper jury instruction claims were available to Petitioner at the time of trial, direct appeal, and/or well before the expiration of the one-year limitations period in 1997. Even assuming that the Sixth Circuit erred in denying him leave to file a successive petition as to some or all of those claims in 1997, Petitioner has still not shown why he waited so long to seek further review of those claims in federal court. Petitioner's remaining claims are untimely and barred by the statute of limitations. Furthermore, as discussed *supra*, Petitioner has not established that he is entitled to equitable tolling of the one-year period under *Dunlap* or *Souter*. His remaining claims must therefore be dismissed.

## V. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by

---

[3]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. The Court concludes that jurists of reason would not find the Court's procedural rulings debatable or wrong. The Court denies a certificate of appealability.

Finally, the Court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal of the court's decision would be frivolous. *See* Fed. R. App. P. 24(a). Accordingly, the Court will also deny leave to proceed on appeal *in forma pauperis*.

## VI.  <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner's claims are untimely and not saved by statutory tolling or equitable tolling. The Court alternatively concludes that the claims based upon the Beasley affidavit lack merit and the remaining claims which are not based upon the Beasley affidavit exceed the Sixth Circuit's grant for the filing of a successive petition.

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

**IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court DECLINES to issue a certificate of appealability.

**IT IS FURTHER ORDERED** that any application for leave to appeal *in forma pauperis* is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 30, 2010

    I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager